TRISTRAM T. MARTIN *vs.* THOMAS O. MARTIN.

A purchaser at sheriff's sale, under a judgment rendered before the lease, is entitled to the rent *falling due* after the accrual of his title, though the lessor may have *anticipated* it by orders on the tenant which the latter had *accepted.*

The assignee of a reversion, either in law or in deed, is entitled to the rent falling due after the assignment where there is no reservation of the rent, because the rent is *incident* to the reversion, and a purchaser at sheriff's sale is an assignee in law.

The lessor cannot claim the rent falling due after eviction of the tenant by a purchaser at sheriff's sale, under a judgment rendered before the commencement of the tenancy.

Eviction of the tenant by title paramount, will, as between lessor and lessee, discharge the liability for rent falling due afterwards, though the tenant is responsible for any part due and payable before the eviction.

A purchaser at sheriff's sale, under a judgment rendered after the commencement of the lease, is entitled to the rent falling due after the accrual of his title.

A defendant in a judgment binding his land cannot create liens on it to the prejudice of the plaintiff in such judgment, and all persons dealing with him in reference to the land, acquire rights, if any, in subordination to the judgment lien.

A purchaser at sheriff's sale is substituted in the place of the landlord, not only as of the time of sale, but as to his title and interest at the *date of the judgment;* he is substituted by law in the place of the judgment creditor.

Where the tenant returns and occupies the premises even after an actual ouster, the right to the rent once suspended is restored, and an entry without expulsion of the lessee will not suspend the rent.

Except in cases arising under the statute of *George 2, ch.* 15, *sec.* 19, rent cannot be apportioned as *to time,* and the party entitled to the estate, when the rent falls due, must have the *entire amount* payable at that time.

APPEAL from the Circuit Court for Talbot county.

This case, between the appellant as plaintiff, and the appellee as defendant, was submitted to the court below upon a *case stated*, showing substantially that defendant leased a farm from Martin Goldsborough for the years 1851 and 1852, agreeing to pay as rent one-half the wheat and corn raised thereon; that in December 1851 and January 1852, *after* the tenant had paid all the rent for the former year, and *before* any for the latter year was *due*, Goldsborough drew two orders upon the defendant in favor of the *plaintiff*, payable out of the rent, which the defendant *accepted;* that in May 1852, *after* these orders had been *accepted,* but *before* the rent for that year was due, the farm was sold at sheriff's sale to John W. Martin, under judgments against Goldsborough, recovered long *prior* to the commencement of defendant's tenancy; that after this sale the defendant acknowledged the purchaser as his landlord, and paid him the rent for the year 1852, except the above orders, but by this attornment it was agreed no admission was made by defendant of his obligation to pay these orders to the purchaser, but the existence or non-existence of this obligation was to be deduced from the facts of the case as a legal inference, and the attornment was to have the same effect as if the purchaser had obtained and executed an *habere facias possessionem* under the act of Assembly, and was made with the understanding that any rights the plaintiff might have under these orders were not to be affected thereby. It was then agreed, that if the defendant is liable to pay to the purchaser the whole rent for the year 1852, notwithstanding these orders and acceptances, and that upon payment thereof he cannot claim the same as a credit on the rent for that year, judgment is to be entered for defendant, otherwise for the plaintiff, for the amount of the orders and interest, with the right to each party to appeal.

The court below, (HOPPER, J.,) gave judgment for the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., EGCLE-STON, TUCK and MASON, J.

*Jas. H. Martin* and *Richard B. Carmichael* for the appellant.

The undertaking to pay the orders is absolute unless the sale releases it. How does the sale operate? It substitutes the purchaser in the place of Goldsborough. What the latter had in the land the former took by the sale. The thing in issue Goldsborough had transferred to the appellant, and it did not remain for the purchaser to take. The return of the sheriff certifies the court, that all he sold was Goldsborough's interest in the farm; and the purchaser did not derive from the *terms* of the sale more than Goldsborough himself might have sold. It is claimed, he derived something more from the effect and operation of the sale. Whence was it derived? It must have passed from some one to become vested in the purchaser. From whom but Goldsborough could it be derived? Not from the plaintiff in the execution under the lien of his judgment. The plaintiff in a judgment has no right in the land of the defendant. All he gets by the judgment is the right to sell and convert it into money. It is neither "*jus in re* nor *jus ad rem.*" 2 *Peere Wms.*, 491, *Brace vs. Duchess of Marlborough.* 4 *Kent's Com.*, 437. The plaintiff's lien extends no further than to cover the whole right, which the defendant might voluntarily transfer to the plaintiff in satisfaction of his debt. The operation of it is "always limited by the extent of the debtor's" (or defendant's) "power of alienation." 3 *Bland*, 298, *Coombs vs. Jordan.* Goldsborough might have conveyed the farm to the judgment creditors by whom it was sold. Such alienation would have passed to the creditor the same interest the execution of that creditor would transfer to him under the judgment. But Goldsborough's alienation could not have defeated the transfers made by operation of these orders. The execution then could not defeat it. The lien of a judgment is unlike the lien of a mortgage. That is a special lien. 2 *Peere Wms.*, 491, above referred to. There the fee passes to the mortgagee.

It is not like the special lien of a *fi. fa.* on personalty. There, too, the right of property becomes divested out of the debtor, and passes to the sheriff, or other executive officer, for the benefit of the creditor. Growing crops are subject matters of execution. The landlord's interest in rent due, or to become due, is liable to execution in whatever form the rent may be stipulated to be paid. Attachment would have lain on the day these orders were drawn upon the matter in issue. If a creditor, by attachment or other execution, could satisfy himself out of Goldsborough's interest in the growing wheat crop, could he not by obtaining his transfer of that interest? If the operation of the *fi. fa.* is enlarged by running back upon the lien of the judgment, to what extent may it not revert? Would it not equally embrace all the rents from the day of its date, 1844? The right to alien is not lost by the operation of a judgment lien upon land. The right to let is less than the right to alien. The right to let carries with it the right to receive the rent. If the defendant in a judgment may let his land he may receive the rent. And he may receive the rent on any terms of the renting. Goldsborough might have received the rent on the day when these orders were drawn; and if he might have received could he not transfer the same?

There is but one thing that can be suggested as a bar to the appellant's claim, and that thing is not and could not be suggested in this case. It cannot be inferred. And it could not be suggested, else the case had not been on an agreed statement. A transfer by the debtor in a judgment to *defraud* the creditor would be held void in any case. So if, with a view to *defraud* the creditor in a judgment, the debtor should transfer the rents of his lands, his transfer would not be held good. But if *this* had been a lease for six years and Goldsborough received the whole rent in advance, or assigned it on the day when these orders were drawn, what ground but fraud could avoid the transfer? This predicate is wanting here.

*Samuel Hambleton* and *E. F. Chambers* for the appellee. The question submitted to the court is, whether "the tenant,

the appellee, is liable to pay to the purchaser, his landlord, the whole rent of the farm for 1852, notwithstanding the afore-mentioned orders and acceptances?" Did then the purchaser become entitled to rent from the time he purchased it, paid for it, and obtained possession of it? Every principle of law or equity would seem to sanction the claim of the landlord, and the mischievous consequences of the opposite position are so obvious, that the appellant's counsel have not ventured to deny them. They say the debtor in this case could have anticipated the rents for "six years," and of course for six and twenty or any other definite number. What then would be the condition of a plaintiff, who, in the effort to obtain the fruits of his judgment, should have purchased his debtor's farm? for it is scarcely conceivable that any others would purchase what they could not have the benefit of for a lifetime. Will he be deprived of his process of *habere facias possessionem*, because the tenant has paid his rent in advance for twenty years, until that term shall have expired? How else can you secure to the tenant the advantage—the right—which, if his payment be effectual, he has lawfully acquired? If this possessory process is not denied to the purchaser, what does he receive by its execution? It would seem he must either be made the landlord, subject to the right of the tenant to occupy for any definite number of years, without receiving a dollar of rent, or he must be made the actual occupant of the farm. Now if the former be the case, it is clear, the debtor, after judgment, and, (as in this case, a month,) before execution, can indirectly avoid the lien on his land, which the judgment had imposed. He may not convey the land itself beyond the reach of his creditor, but he may receive or transfer the rents, the only productive property it has.

It is, however, not supposed that the act of 1825, ch. 103, contemplates any such proceeding as this, when it requires the sheriff "to deliver possession of the lands or tenements to the purchaser," when "the debtor or any other person *holding under him* by title subsequent to the date of the judgment," being in the "actual possession" of the lands, shall refuse to deliver possession of the same to the purchaser. It cannot be

Martin *vs.* Martin.

doubted, it is believed, that the debtor or person holding under him, in such case, must be completely ejected, and the purchaser be put into the actual exclusive possession. This being done, and be it remembered the case stated is before the court in the attitude of its having been done, what then is the relative condition of the purchaser and ejected tenant? If the argument of the appellant's counsel be sound, the tenant, if he shall have paid in advance, must continue to have all his rights as tenant for "six years," (and it might as well have been sixty, if the lease had been recorded,) because the right to enjoy the fruits of a contract of necessity flows from it, when legally executed by persons having authority to make it. The palpable results of the doctrine must conclusively prove its unsoundness.

The vice of the whole argument of the appellant, it is respectfully suggested, consists in a totally erroneous view of the effect of the judgment lien. It is truly said, the plaintiff, by the judgment, gets "the right to sell the land and convert it into money" so far as this assertion goes; but it is equally true, that to the proposition, as stated, should be added the right "to sell it unincumbered by any claim or title derived from the defendant subsequent to the judgment, whether for six years or one year." It is an entire mistake to suppose any difference to exist *in this particular* between real and personal property. In the case of a horse taken in execution, the creditor's lien commences on the delivery of the *fieri facias* to the sheriff, the fruits of that lien are only enjoyed, where, after sale, the purchaser has been put into possession. When possession is delivered, the horse is held adversely to any right to use him which the debtor owner may have sold to a third person. So in the case of the farm; the lien is fixed by the judgment, it is beneficially enjoyed only after sale and delivery, and sale and delivery being accomplished, any intermediate incumbrance by the debtor defendant will not interrupt the exclusive rights of the purchaser. To claim an interest in the land against the occupying purchaser, is precisely the same thing in principle as to claim a right to the services of the horse against the purchaser. How far the general principle may be modified by

another rule of law, which, for the encouragement of agriculture, permits him who sows to reap, is a question not now before the court, and of course not necessary to discuss, as, if allowed, it could not convey to the tenant more than the right to secure his proportion of the crop, and the only question here is, whether he is liable to the purchaser for the *rent* ?

The act of 1825, ch. 103, was intended to accomplish for the purchaser all that he could effect by the more tedious and expensive process formerly resorted to—an ejectment suit—so far as the debtor and all others claiming under him subsequently to the judgment were concerned. Now what would have been the effect of a judgment in ejectment when executed by the sheriff? It treats the tenant in possession as a *tort feasor*—a trespasser—resisting the right of possession, actual possession, of the plaintiff. The judgment is rendered against him accordingly, and the execution commands the sheriff to eject him as an intruder, having no rights as against the plaintiff. Again, rent is incident to the *reversion*, and, except by some statutory provision, can only be claimed by one who has the reversion when the rent becomes due. Martin Goldsborough, when the rents of 1852, by the terms of his lease to T. O. Martin, became due, had no interest in the land, reversionary or otherwise. The title passed by the sheriff's sale. 5 *H. & J.*, 223, *Boring vs. Lemon.* 6 *H. & J.*, 182, *Barney vs. Patterson.* 11 *G. & J.*, 217, *Magruder vs. Peter.* The lien dates from the judgment. 3 *G. & J.*, 359, *Hanson vs. Barnes.* Judicial sales are favored. 8 *G. & J.*, 349, *Marshall vs. Greenfield.* The *lien, ex vi termini*, imports a claim upon the land, which secures its application to the satisfaction of the claim, when the lien shall be enforced in preference and in opposition to any subsequent claim. In 4 *Harrington*, 224, *Stayton vs. Morris*, the precise point is reported to have been decided according to the principles we have advanced.

Tuck, J., delivered the opinion of this court.

We can only decide the question submitted to the court below upon the agreement on which the case was tried, and that is, whether Thomas O. Martin, the tenant, was liable to

Martin, the purchaser of the land, for the whole rent for the year 1852, notwithstanding the orders and acceptances set out in the record?

There can be no doubt that the assignee of a reversion is entitled to the rent falling due after the assignment, where there is no reservation of the rent; " the reason whereof is, that the rent is *incident* to the reversion, and passeth away by the grant of the reversion." *Coke Litt.*, *secs.* 215, 348. *Shep. Touch.*, 89. *Gilbert on Rents*, 67. And according to the *fifth* rule in *Spencer's case*, (3 *Coke*, 16; *Smith's Lead. Cases*, 22;) the purchaser at a sheriff's sale must be deemed an assignee in law. It is there said: " The same law is of tenant by statute merchant or statute staple, or elegit of a term, and he to whom a lease for years is sold by force of any execution, shall have an action of covenant in such a case as a thing annexed to the land, although they come to the term by act in law." *Comyn on Landlord & Tenant*, 250. There seems to be as good reason for regarding the purchaser of the reversion, also, as assignee, and entitled to all incidents of the landlord's estate which he may have bought under the execution, and it has been so adjudged.

It is clear, upon the authorities, that the lessor cannot claim the rent falling due after eviction of the tenant by a purchaser at sheriff's sale, under a judgment entered before the commencement of the tenancy. This was expressly decided in *Day vs. Austin*, *Croke Eliz.*, 398, where, to an action of debt for rent, the defendant pleaded, that before the lease, a judgment had been given against the landlord, and that after the lease the land was extended and delivered in execution by elegit, before which extent there was nothing in arrear, and on demurrer the plea was sustained. See also *Playne's case*, *Croke Eliz.*, 47. These cases are cited in most of the elementary works on this subject as authority for the doctrine, that eviction of the tenant by title paramount, will, as between the lessor and lessee, discharge the liability for rent falling due afterwards, for the reason, that the enjoyment of the land being the consideration for the rent, when the tenant is removed the obligation to pay rent ceases, though he shall be responsible

for any part that may have been due and payable before the eviction. *Gilbert on Rents*, 145. *Comyn on Landlord & Tenant*, 523. *Crabb on Real Property*, 202 to 209. *Hemphill vs. Eckfeldt*, 5 *Whart.*, 274.

But the question here is, whether the purchaser, under a judgment rendered before the lease, is entitled to the rent falling due after the accrual of his title? Upon this point, we think, there can be no ground for doubt. The purchaser's right was expressly affirmed in the case of *Bank of Pa. vs. Wise*, 3 *Watts*, 394, where the judgment against the landlord was obtained after the commencement of the lease. The only other points of difference between the cases is, that in the one before us, the tenant had accepted the orders of the landlord drawn on the rent when due. The case is fully discussed and the authorities referred to, for the purpose of showing that assignees in law, as well as those in deed, are entitled to the rent as incident to the reversion, and goes with it. *Coke Litt.*, 215, *b.* It is considered as following the reversion and belonging to it until actually and completely payable, and on this ground it is, that where the lessor dies before the rent becomes due, it goes to the person entitled to the estate out of which it issues; but if he dies afterwards, the executor or administrator is entitled to it. *Comyn*, 226. *Crabb*, 199.

Rent cannot be apportioned in respect to part of the time, except as provided by statute 11, *Geo.* 2, *ch.* 15, *sec.* 19, which does not apply to this controversy. *Clun's case*, 10 *Coke.*, 128. *Comyn*, 129. *Crabbe*, 223. 3 *Kent's Comm.*, 469. In Delaware, however, a different rule prevails, under an act of Assembly. *Stayton vs. Morris*, 4 *Harr.*, 224. The consequence of the common law doctrine is, that, in cases not within the statute of *George*, when the title of the landlord expires, the tenant is liable to pay no person at all for the previous time, unless a claim can be enforced in behalf of the assignee of the reversion. That this may be done where the claimant is a purchaser at sheriff's sale, under a judgment rendered after the lease, we have seen; and if the same result does not follow a purchase under a judgment obtained before the lease, so as to give the whole rent to the purchaser, he would

Martin *vs.* Martin.

take the land and the profits from the day of sale, and the landlord would get no compensation for the previous occupation of the premises by the tenant. It results, then, that by allowing the purchaser to take all the rent becoming due after the sale, it adds so much to the value of the lessor's interest in the land at the time of sale, and secures to him the benefit of the partial rent, not due at that time, in the only way that it can be done consistently with established rules of law.

We are next to inquire, whether the circumstance that the tenant accepted the orders of the landlord for part of the rent, before it was payable, takes the case without the operation of the principles above stated? We do not perceive that the plaintiff, as assignee of so much of the rent, occupies any better position, as against the purchaser, than the landlord himself would, if these orders had not been given. He must be presumed to have had knowledge of the judgment, and of its legal consequences, if enforced. The defendant, in a judgment binding his land, cannot create liens to the prejudice of the plaintiff. All persons dealing with him in reference to the land, acquire rights, if any, in subordination to the judgment lien. It cannot be maintained, that a debtor so situated, may, by making a lease, and anticipating the payments of the rent, affect the value of the plaintiff's security for his debt. If such an arrangement were made for the purpose of defeating the recovery of the plaintiff's claim, the fraud would avoid it. But such a lease might be made in good faith. The defendant might deem himself—nay, he might in fact be—able to pay the judgment debt, and design to satisfy it out of other means, and fail in his honest and reasonable expectations. Fraud could not be predicated of such a case ; but would the lease stand against the judgment lien? Surely not. The principle is the same, whether the tenant is in under a long lease, or renting from year to year.

We think that the argument on the part of the appellant overlooks the interest of the judgment creditor, and his relation to the matter in controversy. It is true that the sheriff's sale substitutes the purchaser in the place of the landlord ; but as of what time ? Not only as of the time of the sale, but as to

his title and interest at the date of the judgment. He is substituted by law in the place of the judgment creditor. 3 *Md. Rep.*, 423, and cases cited. Whatever the creditor may lawfully sell, under his *fi. fa.*, another may buy and obtain title to, and if the defendant cannot, by a sale, or by acknowledging junior liens, affect the creditor's security, how can the same result be produced by leasing the premises? We agree that the right to alien is not lost by the operation of the judgment, and that the right to let is less than the right of sale; but it does not follow that the party may lease what he cannot sell, without subjecting his vendee to the consequences of the judgment, as a prior incumbrance. If this were so, then, indeed, the power to let would be superior to the right of sale, and a creditor's judgment, practically, would be of no use to him in any case where the debtor thought proper to rent out the land, and assign the rent in advance. If he may lease in the manner suggested, why may he not sell the land? The answer is the same in both instances. Because either act would affect the disposition of property over which he can exert no control, to the prejudice of parties having a prior claim upon it.

The payment of rent in advance, even if these orders and acceptances are to be taken as payment *pro tanto*, will not protect the tenant from the effect of the execution and sale. The purchaser is entitled to possession, notwithstanding the payment. He may turn him out and disaffirm the lease, in which event the tenant, as we have seen, will go free altogether, by reason of the eviction under a superior title. But here there was no eviction. *Salmon vs. Smith*, 1 *Wms. Saund.*, 205, *and note. Bennet vs. Bittle*, 4 *Rawle*, 339. The arrangement between the tenant and the purchaser was not an ouster or expulsion of the latter. If it was constructively an eviction, it was only temporary, and there are authorities to show, that where the tenant returns and occupies the premises, even after an actual ouster, the right to the rent, once suspended, is restored. *Hunt vs. Cope, Cowp.*, 243. 1 *Selw. N. P.*, 432, 500. *Cibels vs. Hill*, 1 *Leon.*, 110. It was held, in 4 *Rawle*, 344, as the result of an unbroken chain of authorities, that an entry, without expulsion of the lessee, will not produce a sus-

Martin *vs.* Martin.

pension of the rent. Here the lessee remained on the land, and acknowledged the purchaser as his landlord, without any intermission whatever.

The principles of apportionment, particularly as applicable to rent, are discussed, and the authorities collected, in the notes to *Smyth's case*, 1 *Swanst.*, 337. We consider the rule established, that, with the exception of cases arising under the statute of *George*, rent cannot be apportioned as to time, and that the person entitled to the estate when the rent falls due, must have the entire amount payable at that time. Even in a case within the equity of the statute, where rent had been actually paid by an under-tenant to his lessor, a tenant for life, on the day it became due, and the lessor died on the same day, his executor was held to account with the remainder-man for what was so paid to his testator, on the ground that the lessor had no remedy, before his death, to compel payment, and the rent, therefore, passed to the next owner of the estate. *Lord Rockingham vs. Penrice*, 1 *Peere Wms.*, 177. *Salk.*, 578. 1 *Swanst.*, 346. The decree in that case declared that, as to the tenant who had paid the rent before it became due, it was a good payment, because the lessor lived until the rent-day, and that his executor must make the same good to the person entitled in remainder. It follows, that if the lessor had died before the rent-day, the payment to him would not have discharged the tenant, on the principle that the lessor's interest must continue until the rent falls due, to entitle him to receive and retain it.

We must presume that the purchaser, in this case, bought the land with reference to, and in reliance upon, the obligations of the tenant, and his own rights as vendee, and in accordance with what we take to be the rules of law by which these are to be ascertained, the judgment must be affirmed.

*Judgment affirmed.*