## OLIVER vs. McCLURE.

EXECUTION SALES: *To what redemption laws do not apply.*

The provisions of the Code of Civil Practice, secs. 691 to 693 inclusive, respecting the redemption of lands sold on exceution, do not apply to judgments rendered on contracts made before the adoption of the code; but sales under executions, on such judgments, are governed by the law in force at the time of the making of the contract between the parties.

LEGISLATURE: *Power of, to change remedy, etc.*

It is competent for the legislature to change remedies, process, etc., before judgment; but when the right is judicially ascertained, they cannot interfere with the process to enforce that right that materially renders the right less efficient than that in existence when the contract was made.

APPEAL from *Pulaski* Circuit Court.

Hon. JOHN WHYTOCK, Circuit Judge.

*Farr & Fletcher* and *A. H. Garland,* for appellant.

*T. D. W. Yonley,* for appellee.

WARWICK, Sp. J. On the 25th day of June, 1870, one Solomon Miller obtained judgment against William D. Pennington for the sum of $783.00 in the circuit court of Pulaski county. This judgment was based on a note given by Pennington to Miller in 1860.

On the 10th of February, 1871, Miller caused an execution to issue on said judgment against Pennington, by virtue of which W. S. Oliver, sheriff of Pulaski county, on the 24th day of February, 1871, levied on certain real estate as the property of Pennington, and by him advertised for sale on the 18th day of March, 1871. At this sale John McClure was the purchaser of certain of the lands so levied upon and sold.

At the May term, 1871, of the Pulaski circuit court, McClure filed a petition against Oliver, reciting the above facts, together with a full description of the land so bought by him, and praying a rule on the said Oliver to require him to execute a sheriff's deed to McClure for the property purchased by him.

To this petition the sheriff filed a demurrer for the reason "that said plaintiff (McClure) is not entitled to a deed until one year from the date of the sale therein (the petition) named." Demurrer was overruled by the circuit court, and the sheriff ordered by the court to execute deed to McClure for the lands described in the petition. From this ruling Oliver appealed to this court.

At the time the contract or note was made, to-wit: in 1860, by the laws of this state, the property of judgment debtors, both real and personal, when sold under execution, was sold absolutely, and all the title of the debtor passed to the purchaser. In the case of lands being sold, the sheriff executed a deed to the purchaser which passed all the title, legal and equitable, of the judgment debtor, without any right of redemption.

Such remained the law until the adoption of the code, which was in force at the time of the rendition of the judgment of *Miller v. Pennington*, (June 1870), as well as when the sale was made. Section 691 of the code provides that "when any real estate, or any interest therein, is sold under execution, the same may be redeemed by the debtor from the purchaser, or his vendees, or the personal representatives of either, within twelve months thereafter." Sec. 692 provides the manner of redemption, and requires the purchase money to be deposited with the clerk with fifteen per cent. per annum thereon. Sec. 693 provides that the sheriff shall give the purchaser of any real property sold upon execution a certificate of sale, and that "no conveyance shall be made to the purchaser, nor the possession delivered to him, until the time for redeeming has expired," and if redeemed, the sale and certificate of purchase shall be null and void. Other sections provide that other judgment creditors may redeem, and the manner thereof.

The only question involved in this case is, whether the provisions of the code, above referred to, permitting the redemption of lands sold under execution, do or can constitutionally apply to judgments rendered on contracts made before the adoption of the code.

Under the law as it stood, when the contract between Miller and Pennington was made, a creditor, after obtaining a judgment against his debtor, had a right to subject his lands to absolute sale, and the purchaser received a deed from the sheriff, and at once entered upon the use and enjoyment; he purchased not an equitable or contingent estate, but all the estate that the judgment debtor had in the lands.

Whatever rights Miller had, in the case at bar, passed to the purchaser, McClure; and in the determination of the question it matters not that McClure, a stranger, purchased rather than Miller, for the purchaser of lands sold under exe-

cution, to satisfy a judgment, stands in the place of the judgment creditor, and is entitled to all the rights and privileges growing out of that relation. *Spindler v. Atkinson*, 3 Md., 423; *Scott v. Purcell*, 7 Blackf., 66; 7 Md., 377; *Harper v. Tapely*, 35 Miss., 507; *Hildreth v. Sands*, 2 Johns. Ch., 35; *Sands v. Hildreth*, 14 Johns., 493; *Ridegway v. Underwood*, 4 Wash. C. C. R., 129.

The main inquiry then is, Did the law governing sales under execution, in force at the time, enter into and become a part of the contract between Miller and Pennington?

Sec. 10 of art. I of the constitution of the United States provides that "no state shall  *  *  pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts." Sec. 13 of art. I of our constitution is to the some purport.

This provision has so often been under discussion in the federal and state courts, that we cannot do better than to briefly review what has been held by the courts in cases similar to this.

In the case of *Burton v. Bolander*, 4 G. Greene (Iowa), 393, and *Corriel v. Ham*, id., 455, the court say that execution laws enter into and become a part of the contract, and in the latter case say that, so far as execution laws are merely remedial, they may be modified and changed at any time, but that while remedial directions to the officers of the law for enforcing those rights may be changed, the substantial rights of parties, under the contract, cannot be changed or impaired by subsequent laws.

The case of *Rosier v. Hale et al.*, 10 Iowa., 470, was one where the sheriff, by virtue of an execution, sold certain lands to the highest bidder, disregarding a statute in force at the date of judgment and sale, which required that on sales under execution the sheriff should cause the property to be appraised, and requiring the property to bring two-thirds of its appraised

value. The judgment in this case was rendered on a contract made prior to the appraisement law, and the court again held that the law in force at the time of making the contract governed, and that the appraisement law could not constitutionally apply to contracts made prior to its passage. Again in *Malony v. Fortune*, 14 Iowa, 417, the same court held that a redemption law, allowing redemption, within one year, on sales of property under foreclosure of mortgage, the same as on judgments at law, could not apply to prior contracts of mortgage.

In *Willard v. Longstreet*, 2 Douglass (Mich.), 172, the court held the provisions of a statute prohibiting the sale of property on execution, unless it would bring two-thirds of its appraised value, so far as it applied to the remedy to enforce preëxisting contracts, unconstitutional and void, and that the judgment creditor had a right to insist on a sale in accordance with the law in force at the making of the contract. This rule has been subsequently affirmed by the courts of that state.

In *Bungardner v. The Circuit Court of Howard County*, 4 Mo., 60, which was *mandamus* to compel the issuance of an execution, on a judgment before then obtained, the court held the provisions of a stay law, allowing a stay of execution for four months, to be unconstitutional.

Again in *Stevens v. Andrews, Sheriff*, 31 Mo., 205, the court, in discussing a stay law, affirmed the ruling in 4 Mo., 50, and held that stay laws could not constitutionally apply to prior contracts.

In a careful and well considered opinion by Judge HAY-WOOD in 1 Peck. (Tenn.), 1, he says: " The contract is made by the parties, and if sanctioned by law, it promises to enforce performance, should the party decline performance himself. The law is the source of the obligation, and the ex-

tent is defined by the law in force at the time the contract is made. If this law direct a specific execution, and a subsequent act declares there shall not be a specific execution, the obligation of the contract is lessened and impaired. The legislature may alter remedies, but they must not, so far as regards antecedent contracts, be rendered less efficacious or more dilatory than those ordained by the law in being when the contract was made."

In *Goenen v. Schroeder*, 8 Minn., 387, the court say, it is clear that the party adopts the law in force at the time he makes the contract, and held that a law permitting redemption of mortgages, in a specified time after sale, could not apply, constitutionally, to prior mortgages.

Similar doctrine was held in 7 Mon., 542 and 587. In *Scobey v. Gibson*, 17 Ind., 572, the court, in construing an act providing for the redemption of real property sold upon execution, etc., says, " that so far as the same was intended to apply to sales or judgments rendered upon contracts existing at and before its passage, it is in conflict with the provision of the constitution of the United States, which prohibits the passage of any law impairing the obligation of contracts." " It is true," says that court, " that the state, for convenience, may change legal remedies; may vary times of holding courts; shift jurisdiction from one to another; change forms of action, of pleadings, of process, etc., and that such legislation may, incidentally, delay somewhat the collection of given debts. But such is not the purpose of this statute; the legislature cannot, under the guise of legislating upon the remedy, intentionally in effect impair the obligation of contracts. Any legislation professedly directed to the remedy, which deprives the party of one substantially as efficient as that existing at the making of the contract, does impair the obligation of the contract." Referring to 1 How., 319; 3 id., 707; 15 id., 304. This case was

reaffirmed and followed in the case of *Inglehart v. Wolfin*, 20 Ind., 32 (1863).

The California supreme court, in *Thorne v. San Francisco*, 4 Cal., 128, declared that redemption laws could not apply to contracts made prior to their passage. This doctrine was reaffirmed, until in *Moore v. Martin*, 38 Cal., 428, they held to a different ruling, overruling *Thorne v. San Francisco*. This is the only case we are able to find which is at variance with the above cases.

We come now to examine the leading cases in the United States supreme court, and which have been the ruling authorities relied upon in all the state courts. *Bronson v. Kinzie et al.*, 1 How., 311, was a bill brought in the cuircuit court of Illinois to foreclose a mortgage. After the mortgage was executed, and before the bill to foreclose was filed, the legislature of Illinois passed a law which provided that mortgagors and judgment creditors should have the same right to redeem mortgaged premises, sold by the decree of a court of chancery, that had been given to debtors and judgment creditors by a previous law of 1825. The law of 1825 authorized the party whose lands should be sold by execution after the law took effect, to redeem them within twelve months from the day of sale, and if the debtor did not redeem within the time limited, any judgment creditor was authorized to do so within fifteen months from sale. By another act passed after making the mortgage, it was directed that when any execution should be levied upon property, real and personal, it should be the duty of the officer to have the same appraised, and at the sale it should not be struck off unless two-thirds of the valuation should be bid therefor; and further provided that all sales of mortgaged property should be made in accordance with the act; *held*, that "a state law, passed subsequently to the execution of a mortgage, which declares that the equitable estate of

36

the mortgagor shall not be extinguished for twelve months after a sale under a decree in chancery, and which prevents a sale, unless two-thirds of the amount at which the property has been valued by appraisers shall be bid therefor (as applied to prior contracts), is within the clause of the tenth section of the first article of the constitution of the United States, which prohibits a state from passing a law impairing the obligation of contracts."

Chief Justice TANEY, who delivered the opinion of the court, says that "as concerns the obligations of the contract upon which this controversy has arisen, they depend upon the law of Illinois as they stood at the time the mortgage deed was executed. The mortgage, given to secure the debt, was made in Illinois, for real property situated in that state, and the rights which the mortgagee acquired in the premises depended upon the laws of that state. In other words, the existing laws of Illinois created and defined the legal and equitable obligations of the mortgage contract."

Again he says: "Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy, or the contract itself. In either case it is prohibited by the constitution."

"There is no covenant (still quoting from the opinion) giving the mortgagor the right to redeem by paying the money after the day limited in the deed, and before he was foreclosed by the decree of the court of chancery. Yet no one doubts his right or his remedy; for, by the laws of the state then in force, this right and this remedy were a part of the law of the contract, without any express agreement by the parties. They were annexed to the contract at the time it was made, and formed a part of it, and any subsequent law, impairing the

rights thus acquired, impairs the obligations which the con-
tract imposed."

It will be perceived that this case was not decided upon any
of the covenants contained in the mortgage, but on the broad,
general principle that the laws of the state entered into and
formed a part of the contract, and any subsequent law which ob-
structed the rights thus conferred and acquired by the law itself,
impaired the obligation of the original contract, and was void.

In the case of *McCracken v. Hayward*, 2 How., 608, the case
of *Bronson v. Kinzie* was fully discussed and affirmed. This
case was also from Illinois, and the question before the court
was whether the appraisement law of that state could, consti-
tutionally, apply to an execution on a judgment at law ren-
dered on a contract made prior to the passage of the law; and
the court held that it could not be made to apply. In this
case the judge who delivered the opinion says: "The obliga-
tion of the contract between the parties in this case was to
perform the promises and undertakings therein; the right of
plaintiff was to damages for the breach thereof, to bring suit
and obtain judgment, to take out and prosecute an execution
against the defendant till the judgment was satisfied pursu-
ant to the existing laws of Illinois. These laws, giving these
rights, were as perfectly binding on the defendant, and as
much a part of the contract as if they had been set forth in its
stipulations in the very words of the law relating to judgments
and executions. If the defendant had made such an agree-
ment as to authorize a sale of his property, which should be
levied on by the sheriff, for such price as should be had for
it at a fair public sale, on reasonable notice, it would have
conferred a right on the plaintiff which the constitution made
inviolable; and it can make no difference whether such right
is conferred by the terms or law of the contract."

In *Howard v. Bugbee*, 24 How., 461, the supreme court of

the United States again affirm *Bronson v. Kinzie* and *Mc-Cracken v. Hayward*. This was a case from Alabama. A mortgage, given in 1836, was foreclosed in 1846, and, in 1848, Howard, a stranger to the mortgage and decree, standing in the same relation that McClure does in this controversy, became the purchaser under the decree. In 1842, the legislature of Alabama passed an act authorizing a judgment creditor of the mortgagor, at any time within two years after the sale under a mortgage, to redeem the land on certain conditions. Bugbee, a judgment creditor, sought in the state court to redeem under the law; case appealed to United States supreme court. The only question involved was, whether the redemption law could apply to debts and mortgages made prior to the law. The court held that the law could not, constitutionally, apply to prior contracts, citing the above cases in 1st and 2d Howard, and reaffirming them.

We can see no difference in the principle involved in the case at bar, and the one decided by the supreme court of the United States, and whatever might be our individual opinion, are bound to follow their rulings on any question regarding the federal constitution, as much as the inferior courts of this state are bound to follow ours.

While in the case of *Bronson v. Kinzie*, the contract under consideration was a mortgage, yet the court, in that case, expressly put it on the ground of the statute entering into the contract, and not by reason of any of the express conditions of the mortgage.

While it is true that the state may change and alter remedies, extend or limit the time that notice may be given — they might give the defendant to the second term of the suit brought to answer, and do many other things touching the remedy, yet they must not, in acting on the remedy, interfere with any right accruing under the contract, whether that right

be by express stipulated contract, or be the result of the law. Counsel for the appellant insist that the legislature may alter and change the remedy *ad libitum*, and cite many authorities to that effect, which we have carefully examined, and with the exception of the case in 38 Cal., 438, they all seem to pertain to the remedy to ascertain a right, rather than to enforce one. Our conclusion from the authorities is, that it is competent for the legislature to alter and change remedies, process, etc., before judgment, but when the right is judicially ascertained, they cannot interfere with the process to enforce that right that materially renders the right less efficient than that in existence when the contract was made.

The provision of the Code for redemption, instead of allowing an absolute sale of the property, as was the law when Miller and Pennington made the contract, provides for a conditional sale, or in other words, it authorizes the sheriff to make a contract for the absolute sale of property after the lapse of one year's time, unless such contract be defeated by the performance of a specified condition, to wit, the return of the purchase money paid, with interest, before the expiration of the year.

If the statute for the enforcement of the right enters into and becomes a part of the contract, and so we understand the supreme court of the United States, then if the contract be for the absolute sale of property, a law like unto the provisions of the Code materially impairs the obligation of that contract, and, as to such prior contracts, is void; for the right to sell the absolute fee with immediate possession to the purchaser, is worth infinitely more, and much more likely to realize the fulfillment of the contract, to wit, the payment of the money, than the conditional sale provided for by the Code.

Finding no error in the record, the judgment of the court below is affirmed.

McClure, C. J., being disqualified, did not sit in this case. Bennett and Stephenson, JJ., dissenting.