## McClendon v. Board of Health.

Opinion delivered December 8, 1919.

1. MUNICIPAL CORPORATIONS—CITY MANAGER "AN OFFICER."—A city manager appointed under Acts 1917, page 568, to manage the affairs of the municipality; being required to take an official oath before assuming the office and his duties and functions being prescribed, is an officer and not an employee.

2. MUNICIPAL CORPORATIONS—QUALIFICATIONS OF MANAGER.—The provision of Acts 1917, page 568, for city manager of certain municipalities that the manager need not be a resident of the city is invalid under Constitution, article 9, section 3, providing that no person shall be elected or appointed to fill an office who does not possess the qualifications of an elector.

3. Statutes—effect of partial invalidity.—Though Acts 1917, page 568, providing for a city manager, is invalid in so far as section 33 provides that the manager need not be a resident of the city, such provision may be stricken out and the remainder of the act enforced.

4. Health—power of city manager to appoint board of health.—Under Acts 1917, page 568, section 34, authorizing the city manager "to organize, continue or discontinue such division or departments from time to time as to him may be deemed necessary and expedient, and to assist and remove all heads of departments, and all subordinate officers and employees of the city; all appointments to be upon merit and fitness alone," the city manager was authorized to appoint the board of health of the city; an earlier act giving the mayor such power being repealed.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*O. H. Sumpter,* for appellants.

1. The provisions of act 96, Acts 1913, govern the appointment of boards of health of cities of the first class and the provisions of act 114, Acts 1917, do not apply and said act does not expressly give the city manager the authority to appoint such board nor divest the city of such authority.

2. Said act 96 expressly constituted the mayor ex-officio a member of said board and by no rule of statutory construction can he be deprived of that right and the city manager be substituted under either of said acts and the court erred in its declarations of law.

*R. G. Davies,* for appellee.

The decision below was entirely correct and answers all the contentions of appellants and the judgment should be affirmed.

Wood, J. The city of Hot Springs adopted the provision of act 114 of the Acts of 1917, providing for a Commission Manager of Municipal Governments for cities of the first class. The Board of Commissioners, consisting of the mayor and four commissioners duly elected under the act, appointed George R. Belding city manager

according to the provisions of the act providing for such appointment and prescribing the duties of city manager.

Act 96 of the Acts of 1913 provides for a Board of Health in cities of the first and second class and authorizes the mayor of such cities to appoint a City Board of Health consisting of five persons. J. W. McClendon was the duly elected mayor of the city of Hot Springs. On the first day of May, 1919, he appointed the members of the Board of Health of the city of Hot Springs. The persons so appointed were duly qualified to act, and under the appointment organized what they contend was the Board of Health for the city of Hot Springs.

On the 9th day of May, 1919, George R. Belding, the city manager, appointed five other persons as members of the Board of Health of the city of Hot Springs, who were also duly qualified to act as such and under such appointment organized what they contend was the Board of Health for the City of Hot Springs.

This action was instituted in the circuit court by George R. Belding and those appointed by him as the Board of Health against J. W. McClendon, the mayor, and those appointed by him as the Board of Health. The purpose of the action was to determine whether or not the mayor of the city of Hot Springs had authority under the law to appoint the City Board of Health or whether that authority was vested in the city manager.

The circuit court held that the city manager had the power of appointment and that the board appointed by him was the duly constituted Board of Health of the city of Hot Springs. From the judgment ousting the members of the purported Board of Health appointed by the mayor is this appeal.

Sections 33 and 34 of Act 114 of the Acts of 1917, are as follows: "Section 33. The mayor and city commission shall elect the city manager, who shall be the administrative head of the municipal government under the direction and supervision of the city commission, who shall hold office at the pleasure of the city commission. He shall be appointed without regard to his political be-

liefs and need not be a resident of the city at the time of his appointment, and shall be a person specially fitted by education, training and experience to perform the duties of said office. He shall be responsible for the efficient administration of all departments within the scope of his duties. He shall execute bond in favor of the city for the faithful performance of his duties in such sum and with such surety or sureties as may be fixed and approved by the city commission. During the absence or disability of the city manager, the city commission may designate some properly qualified person to execute the functions of the office.''

"Section 34. The powers and duties of the city manager shall include the following:

"(a)  To see that the laws and ordinances are enforced.

"(b)  To organize, continue or discontinue such division or departments from time to time as to him may be deemed necessary and expedient, and to assist and remove all heads of departments, and all subordinate officers and employees of the city; all appointments to be upon merit and fitness alone. He shall fix salaries and wages of all subordinates and employees.

"(c)  To exercise control over all such departments or divisions so created, or that may hereafter be created, which shall be made subject to the supervision of the city manager.

"(d)  To see that all terms and conditions imposed on the city and its inhabitants, or any public utility franchise, are faithfully kept and performed, and upon knowledge of any violation thereof, to call the same to the attention of the city attorney, who is hereby required to take such steps as are necessary to enforce the same.

"(e)  To attend all meetings of the commission, with the right to take part in the discussions, but having no vote.

"(f)  To recommend to the commission for adoption such measures as he may deem necessary or expedient.

"(g)   To act as budget commissioner and to keep the city commission fully advised as to the financial condition and needs of the city.

"(h)   To keep full and complete records of the doings of his office, and to render as often as may be required by the city commission a full report of all operations during the period reported on, and annually, or oftener, if required by the city commissioners, to make a synopsis of all reports for publication.

"(i)   To keep the city commissioners fully advised as to the needs of the city within the scope of his duty and to furnish the city commissioners on or before the 31st day of December of each year a careful estimate in writing of the appropriations required during the next ensuing fiscal year for the proper conducting of the departments of the city under his control.

"(j)   To keep repaired all city buildings, and to purchase all supplies for every department of the city.

"(k)   To perform such other duties as may be prescribed by this act or be required of him by ordinance or resolution now in effect, or which may hereafter be enacted."

Section 36 provides for the removal of the city manager by a majority vote of the city commission by presenting written statement setting forth the reason for his removal, a copy of which shall be delivered or mailed to him. The city manager is given five days within which he may request a hearing by the city commission and in that event his removal shall not take effect until a hearing is had and a written decision rendered by a majority of the city commission.

Among the provisions of the act is section 40, which in part is as follows: "(a)   Whenever, in the laws of this State or in the ordinance of a city adopting the provisions of this act, reference is made to the 'council' or 'aldermen,' such reference shall be deemed made to the 'city commission' and 'commissioners' respectively created and elected under the new form of government hereby created.

"(b)   When any officer or office is named in any law of the State or ordinance of such city, it shall, when applied to cities under this act, be construed to mean the officer or office having the same functions or duties under the provisions of this act or under the ordinances passed under authority thereof."

Another provision of the act (114 of the acts of 1917) is: "Section 15.   The mayor and commissioners shall act, possess, and exercise all executive, legislative and judicial powers and duties now had, possessed and exercised by the mayor, city council, board of public affairs, and all other officers and offices in cities of the first class, except as otherwise expressly provided herein."

Act 114 concludes with this clause, "All laws and parts of laws in conflict herewith are hereby repealed."

In *Throope* v. *Langdon,* 40 Mich. 673-82, Judge Cooley says: "An office is a special trust or charge created by competent authority.   If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer. The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position.   In particular cases other distinctions will appear which are not general."

In *Shelby* v. *Alcorn,* 36 Miss. 273, the court said: "It may be stated as universally true that where an employment or duty is a continuing one which is defined by rules prescribed by law and not by contract such charge or employment is an office and the person who performs it an officer."

In *Lucas* v. *Futrall,* 84 Ark. 540, we quoted the above from the Supreme Court of Mississippi and to the same effect from other adjudicated cases.

"While no hard and fast rule upon the subject" can be announced that will be applicable to all cases, yet when the rules generally adopted by the text writers and the authorities as cited and quoted by us in *Vincenheller v. Reagan,* 69 Ark. 460, and *Lucas* v. *Futrall, supra,* for distinguishing between an office and employment, are kept in mind, there can be no doubt that, measured by these usual tests, the position of city manager under Act 114 of the Acts of 1917 is an office and his duties are those of a public officer.

A glance at the provisions of the act prescribing the powers and duties of the city manager under the commission and city manager plan of government, and also the powers and duties prescribed for the mayor under the old or aldermanic plan for cities of the first class as contained in sections 5611-5617 inclusive, of Kirby's Digest, shows that it was the intention of the Legislature by Act 114 of the Acts of 1917, to transfer many of the powers and duties of the mayor under the aldermanic plan to the city manager under the commission and city manager plan.

A comparison of the statutes will show that under the commission and city manager plan as set forth in act 114, the city manager is clothed with those executive and administrative functions and duties which under the old or aldermanic plan were conferred upon and discharged by the mayor. The city manager is the head of the executive and administrative departments of the government, but he had no legislative functions such as the mayor had under the old form and such as he has now under the commission form.

Under a purely commission form administrative authority and responsibility is usually divided among the commissioners but under the present commission and city manager form all strictly executive and administrative authority, which under the old form was vested in the mayor, and which under the purely commission form was vested in the commission, is now, under the commission and city manager form (under act 114), vested in

the city manager. So that under the latter form there is no division of administrative and executive functions among several persons, but these are concentrated in the one person, the city manager.

Without entering into a minute analysis of the provisions prescribing his functions and duties, it suffices to say that the various provisions of the act creating the position of city manager and prescribing his functions and duties show that it was the intention of the Legislature to make such position an office and not an employment. His duties are such as are prescribed by the Legislature or by ordinance or resolution passed by the Board of Commission. They are public in character. They are also of great dignity and responsibility and in no sense contractual.

We conclude, therefore, that the position of city manager is an office and that the person appointed by the commission to exercise its functions and duties is an officer.

Being an officer, the provision that he need not be a resident of the city at the time of his appointment as contained in section 33 is contrary to article 9, section 3 of the Constitution providing that no person shall be elected or appointed to fill an office who does not possess the qualifications of an elector. But a careful review of the various provisions of the act convinces us that the Legislature would have passed the law with this provision eliminated, and that it can be stricken out and leave the act as a whole a complete law capable of enforcement.

It will be observed that section 34 of the act provides among other things as follows: (b) "To organize, continue or discontinue such division or departments from time to time as to him may be deemed necessary and expedient, and to assist and remove all heads of departments, and all subordinate officers and employees of the city; all appointments to be upon merit and fitness alone. He shall fix salaries and wages of all subordinates and employees."

The provision of act 96 of the Acts of 1913 creating a City Board of Health necessarily constitutes such board a department of the city government and the section above quoted conferring upon the city manager the power to organize, continue and remove all heads of departments and prscribing that all appointments shall be upon merit and fitness alone clearly vested the city manager with the power to appoint the City Board of Health.

Section 14 of the act 96 of the Acts of 1913, conferring upon the mayor the power to appoint members constituting the said Board of Health is necessarily repealed by section 34 (b), act 114, Acts 1917, above quoted. The two provisions are in direct conflict, and the last must prevail.

The judgment of the circuit court denying the petition of appellants is, therefore, correct and must be affirmed.

McCULLOCH, C. J., (concurring). My conclusion is that the position of city manager and also membership on the board of health are each, under the statute, an employment and not an office (*Middleton* v. *Miller County,* 134 Ark. 514) and that the statute in its entirety is valid. I concur in the judgment solely on that ground.

I am authorized to say that Mr. Justice SMITH also concurs on this ground.