OLIVER *v.* SOUTHERN TRUST COMPANY.

Opinion delivered April 21, 1919.

1. STATUTES—APPROPRIATION BILL—NUMBER OF NOTES.—Under Constitution, article 5, section 26, relating to appropriations, the Legislature cannot appropriate money to pay a claim against the State under a contract not authorized by pre-existing law ex-

cept by a bill passed by two-thirds of the members elected to each branch of the General Assembly.

2.  SAME—EFFECT OF PARTIAL UNCONSTITUTIONALITY.—Where a statute is unconstitutional in part, the valid portion will be sustained if complete in itself and capable of being executed in accordance with the apparent legislative intent; but if the valid and invalid portions are so mutually connected and dependent on each other as to warrant the belief that the Legislature would not pass the valid portion independently, the entire act must fail.

3.  SAME—CONSTRUCTION—TITLE—PREAMBLE.—While not controlling, the title and preamble of an act may always be considered in determining its meaning.

4.  SAME—PARTIAL INVALIDITY—DEPENDENT PROVISIONS.—Acts 1915, p. 326, entitled an act to appropriate money for an exhibit of the State's resources, at an exposition, the main object being to make an appropriation, was void as a whole, not having received the necessary two-thirds vote of the members elected to each branch of the General Assembly.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed and dismissed.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellant.

The act did not receive the necessary affirmative vote required by article 5, section 27, Constitution, and is a nullity. 1 Sutherland on Stat. Const. 579; 6 R. C. L. 121; 117 Ark. 352. The claims sought to be paid are not provided for by any pre-existing law and the whole act is void. 10 Wash. 388. The whole act must be constitutional or it is void.

*Moore, Smith, Moore & Trieber,* for appellees.

There was pre-existing legislation and the unconstitutionality of section 6 does not render the whole act void. The act was properly passed and received the necessary vote. The act was divisible and the constitutional parts should be sustained. 32 Ark. 131; 37 *Id.* 356; 48 *Id.* 370; 89 *Id.* 466; 111 *Id.* 108; 119 *Id.* 324; 93 *Id.* 612-620. Section 6 can be entirely eliminated and the balance of the act will stand. The act is complete without section 6. As to the title see 124 Ark. 475. Eliminate section 6 and

the balance of the act is constitutional and valid.  The act was constitutionally passed.  Art. 5, § 27, Const.

SMITH, J.  Appellees filed their petition for mandamus, which contained the following recitals:  The Governor of the State on or about the —— day of —— 1914, appointed a commission to select a site at the Panama-Pacific International Exposition upon which to erect a building within which the exhibits of this State might be housed, and to take such steps as might be necessary for the collection and maintenance of such exhibits as would be shown at the exposition.  Because of the early approach of the opening day of the exposition, to-wit, February 20, 1915, it was deemed inadvisable by the commission to await until the next ensuing session of the General Assembly to pass legislation formally authorizing the commission to proceed with the work and to make an appropriation towards the expense thereof.  Accordingly on June 26, 1914, the commission selected a site and proceeded with erection of a building thereon, and with the collection of the respective exhibits and with the transportation of them to the exposition.  In order to pay for the foregoing work approximately twenty-five thousand dollars in money was donated to said commission by citizens of the State, and other citizens of the State donated several thousand dollars worth of building materials of various kinds.  In addition to the foregoing fund the commission during the progress of said work received and had available the further sum of approximately eighteen thousand dollars which was loaned and advanced it by other citizens.

At the ensuing session of the General Assembly, Act No. 82 was passed, which was approved February 25, 1915, entitled, "An act to appropriate money for an exhibit of the resources of the State of Arkansas at the Panama-Pacific International Exposition of 1915, and for other purposes."

That in the passage of said act the General Assembly had in view the fact that the commission had received

and was in the act of collecting and maintaining said exhibit with the aforesaid donations and advances of money and material; but in order to make a more creditable display appropriated the additional sum of forty thousand dollars, or so much thereof as might be necessary, in order that the exhibit might be made more successful. Upon the passage of the act two-thirds of the members present and voting in the Senate voted that the act become a law, and a majority less than two-thirds of those present and voting in the House of Representatives voted to the same effect. A quorum was present and voting in each house.

Thereafter on March 15, 1915, in a suit brought by J. C. Belote, a citizen and taxpayer of the State, against the Auditor and Treasurer of State to restrain the Auditor from issuing and the Treasurer from paying warrants drawn against the appropriation contained in the act, we held that the bill had failed to receive the necessary affirmative vote required by article 5, section 30, of the Constitution, and therefore never became a law. *Belote* v. *Coffman,* 117 Ark. 352.

By reason of this decision no money was ever paid out of the State Treasury upon said appropriation, but the commissioners proceeded with the completion of the building and the assembling of the exhibit, which it maintained with entire success at the exposition throughout its duration. Thereafter, in order to reimburse those persons who had prior to the passage of Act No. 82 of 1915 loaned and advanced to said commission money which was used in the collection and maintenance of said exhibit the General Assembly passed an act, which was approved by the Governor on February 27, 1919, entitled "An act to provide for the payment of the indebtedness incurred by the Arkansas Commission to the Panama-Pacific International Exposition," appropriating for the repayment of the said persons and citizens who had made loans and for the payment of certain obligations incurred by the commission, the sum of $23,384.33. This act directed the Auditor to draw his warrant on the Treasurer

in favor of the Southern Trust Company as trustee for persons having claims against said commission, the number and amount of each being set out in the preamble of the act. In the passage of said act of 1919, twenty-eight members of the Senate voted that it become a law, there being no votes to the contrary; and in the House of Representatives sixty members voted that it become a law, and twenty-eight voted to the contrary.

The petition concluded with the allegation that notwithstanding the passage of said act the Auditor has refused to issue his warrant on the Treasurer as required by said act, whereupon it was prayed that a writ of mandamus issue compelling him to do so.

To the above petition the Auditor filed a demurrer on the ground that it did not state facts sufficient to entitle the petitioners to the relief prayed. The demurrer was overruled, and upon the Auditor declining to plead further, the court entered an order requiring him to draw and deliver his warrant as prayed in the petition, and this appeal has been prosecuted from that order.

The present appeal does not involve the section of the Constitution construed in the case of *Belote* v. *Coffman, supra;* but the Auditor's refusal to draw his warrant is based upon section 26, article 5, of the Constitution, which reads as follows: "No extra compensation shall be made to any officer, agent, employee or contractor after the service shall have been rendered or the contract made; nor shall any money be appropriated or paid on any claim, the subject matter of which shall not have been provided for by pre-existing laws; unless such compensation or claim be allowed by bill passed by two-thirds of the members elected to each branch of the General Assembly."

It will be borne in mind that the Senate consists of thirty-five members and the House of one hundred, so that this act of 1919 did not receive the vote of two-thirds of the members elected to the House.

On behalf of appellees it is insisted that, while the appropriation contained in the act of 1915 failed because

it did not receive the affirmative vote of two-thirds of those present and voting in the House of Representatives, yet a valid act was passed which legalized the work of the commission up to the time of its passage and conferred authority for the continued performance of its duty and authorized the obligations thereafter incurred. The correctness of this contention is the point at issue.

As applied to the facts in this case, the section of the Constitution under consideration (section 26, article 5), means that the Legislature cannot authorize the payment of any claim against the State unless a pre-existing law authorized the contract under which the claim was incurred except by a bill passed by two-thirds of the members elected to each branch of the General Assembly; in other words, its effect is to prevent the Legislature from making appropriations in satisfaction of contracts not authorized by some law existing at the time the contract was made, except upon the vote just stated. The question at issue may, therefore, be stated as follows: Did the Commission, under the act of 1915, have the authority to make the contracts upon the credit of the State covering the claims which the act of 1919 attempted to pay?

The rule of construction applicable here is the one applied by us in the case of *Cotham* v. *Coffman*, 111 Ark. 108, in which case we said: "If the proviso requiring Garland County to assume the payment of two-thirds of the salary of the judge of that circuit is unconstitutional and void, what becomes of the act? Does that fact render the whole act void? The rule in such cases has been stated by Judge Cooley in his work on Constitutional Limitations to be as follows: '*   *   *   *   Where, therefore a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be

contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' Cooley's Constitutional Limitations (6 ed.), p. 210. This rule has been followed in innumerable cases in the various courts, and by this court in the following cases: *L. R. & Ft. Smith Rd. Co.* v. *Worthen,* 46 Ark. 329; *State* v. *Marsh,* 37 Ark. 356; *State* v. *Deschamp,* 53 Ark. 490; *Cribbs* v. *Benedict,* 64 Ark. 555; *Wells Fargo & Co.* v. *Crawford County,* 63 Ark. 576.''

In the application of the rule quoted in the case from which we have quoted it, we held that the constitutional and unconstitutional portions of the act there construed were separable, and we gave effect to the constitutional part. But do we have the same result here?

The title of the act of 1915 indicates the prime and controlling purpose was to appropriate money; and while

the title of an act is not controlling in its construction it is always proper to look to. the title in determining its meaning. *School District* v. *Howard,* 124 Ark. 475. This is true also of the preamble, where we find the recital that, ''Whereas, a legislative appropriation is the fairest and most equitable method of raising the necessary funds, each citizen thereby contributing according to his assessed wealth, which if equally distributed would amount to only a few cents to each individual, therefore, 'Be it enacted, etc.' '' The purpose expressed both in the title and preamble is so interwoven in the body of the act that we are constrained to conclude that the act as a whole contemplates the disbursement of the funds appropriated in the section of the act (section 6) which contained the appropriation, and that the other sections contain the details and directions for the expenditure of the appropriation, so that if section 6 is stricken out the legislative purpose would be so far defeated that the Legislature would not have passed the act with this section omitted.

The first section defines the duties of the commission and concludes with the proviso that ''no commissioner or county representative heretofore or hereafter appointed shall receive any compensation for their services save while they are in the actual service of said commission and engaged in the work of collecting exhibits or in charge of said Arkansas building or exhibits.'' The payment here provided for was manifestly contemplated to be made out of the appropriation which was contained in section 6 of the act.

Section 2 provides for the display of the exhibits and approves the action of the commission in employing an architect to construct the State building. Section 3 provides for the employment of the necessary assistants in displaying the exhibits and in distributing advertising matter to visitors; but it is obvious that these expenditures were authorized in view of the appropriation which the act contained.

Confirmation of this view is coerced when section 4 is analyzed. That section provides for keeping an ac-

count of all proceedings and for the audit of all expenses and that "the salaries of the secretary, assistants, employees and help shall be paid by warrants drawn on the State Auditor, signed by the commissioner, to be paid out of the fund hereinafter appropriated for the purpose therein expressed; and said commission shall keep an exact account of all the expenditures of all the money by them ordered paid, and at the close of said Panama-Pacific International Exposition, said commission shall furnish to the Governor an itemized statement of all moneys drawn by them from the State, under said appropriation, and the purposes for which drawn, which shall be sworn to by the Commissioner-General and attested by the Secretary. That the Commissioner-General and Treasurer of said Commission shall enter into a lawful bond to the State of Arkansas, to be approved by the Auditor of State, in the sum of ten thousand dollars for the faithful performance of the duties imposed upon them by the provisions of this act."

Section 5 specifies the amount of the salaries and wages of the officers and employees authorized by section 4. Section 6 contains the appropriation; while section 7 —the last section—contains the emergency clause undertaking to put the act immediately into effect.

Without the appropriation contained in section 6 the whole legislative scheme fails, as this is the section which furnishes the motive power, the essential funds to make the remainder of the act effective, and when that section falls, the entire act falls with it, because the use of these funds is so inseparably connected with the whole legislative plan that no valid and enforceable law remains without it.

The judgment of the court below will therefore be reversed and the petition will be dismissed.