Faubus, Governor *v.* Kinney.

5-3649                                          389 S. W. 2d 887

Opinion delivered May 17, 1965.

*Bruce Bennett,* Atty. General, By: *Farrell E. Faubus,* Asst. Atty. General, for appellant.

*Jim Shaver, N. L. Schoenfeld,* Brief Amicus Curiae, for appellee.

CARLETON HARRIS, Chief Justice. This opinion deals with reapportionment of the Arkansas General Assembly.. On January 28, 1965, the United States District Court, Eastern District of Arkansas, Western Division, three judges sitting as the court,[1] held that the existing apportionment of the membership of the House of Representatives and Senate of this state, and the method of apportioning the membership were constitutionally invalid and void, as contrary to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and the Arkansas Board of Apportionment was directed to reapportion the General Assembly in a manner which would meet the requirements of the Equal Protection Clause, such reapportionment to be completed not later than June 15, 1965.[2]

In the meantime, on January 6, 1965, Clarke Kinney, appellee herein, had instituted a suit in the Chancery Court of Pulaski County (Second Division), seeking a declaratory judgment as to the validity of Amendment 45 to the Constitution of the State of Arkansas. An answer was filed to this petition by appellants, and on March 17, 1965, the Chancery Court entered its decree, holding that the provisions of Amendment 45, establishing one hundred members for the House of Representatives, and thirty-five members for the Senate, were effective, standing alone, and valid, under the Constitutions of both the State, and the United States. The trial court further held that the provision of the Constitution, creating the Board of Apportionment,[3] was effective, standing

---

[1] See *Yancey* v. *Faubus,* 238 F. Supp. 290.

[2] The reapportionment was directed under the authority of several cases, decided by the United States Supreme Court, *viz, Baker* v. *Carr,* 369 U. S. 186, decided in 1962, and the following cases, decided in 1964: *Reynolds* v. *Sims,* 377 U. S. 533; *WMCA, Inc.* v. *Lonenzo,* 377 U. S. 633; *Maryland Committee For Fair Representation* v. *Tawes,* 377 U. S. 656; *Davis* v. *Mann,* 377 U. S. 678; *Roman* v. *Sincock,* 377 U. S. 695; *Lucas* v. *Colorado General Assembly,* 377 U. S. 713.

[3] The Board of Apportionment consists of the Governor, the Attorney General, and the Secretary of State.

alone, and that the Board is the proper authority to re-apportion the General Assembly. From the decree so entered, appellants bring this appeal.

A resume of the provisions involved is in order. All of the Arkansas Constitutions have provided for periodic reapportionment of the Legislature on the basis of population. Originally the responsibility for reapportionment was placed in the Legislature, but in 1936, the electorate of Arkansas adopted Amendment 23, which created a Board of Apportionment, and placed in such Board the duty of reapportioning both Houses of the General Assembly, following each Federal census,[4] directing, however, that an initial reapportionment be made in 1937. Acting thereunder, the Board made the 1937 reapportionment, and also reapportioned in 1941 and 1951. Amendment 23, *inter alia*, provided (in Section 2) that the House of Representatives should consist of one hundred members, with ''each county existing at the time of any apportionment'' to have at least one representative, with the remaining members to be equally distributed, as nearly as practicable, among the more populous counties of the state. Section 3 provided that the Senate should consist of thirty-five members, with the Board of Apportionment dividing the state into senatorial districts in such manner that each Senator would represent, as nearly as practicable, an equal number of persons; further, that each district should have at least one Senator. This amendment remained in effect until the general election of November, 1956, when Amendment 45 was adopted by the people. This amendment, which restated the provisions of Amendment 23, in large measure, made only two changes that are here pertinent. Section 3 (referring to the Senate) reiterated the provision that the Senate should consist of thirty-five members, but ''froze'' the senatorial districts in accordance with the State Supreme Court decision in the case of *Pickens* v. *Board of Apportionment*, 220 Ark. 145, 246 S. W. 2d 556. In other words, Section 3 of this amendment provided that the geographical composition of the districts, and the number of Senators from each district,

---

[4] The census is taken every ten years.

should not be changed. In conformity with this section, the Board of Apportionment, in Section 4, was only required to apportion the membership of the House of Representatives.

There are only two questions before this court in this litigation. First, does the decision of the Federal District Court, invalidating the apportionment provided in Section 2 of Amendment 45 (referring to the House of Representatives) and invalidating the apportionment in Section 3 (referring to the Senate), also invalidate the provisions of those same sections which provide that the House of Representatives shall consist of one hundred members, and that the Senate shall consist of thirty-five members? The next question is whether the Board of Apportionment is the proper authority to apportion under the Constitution of this State.

As to the first question, the answer is ''No.'' It is the contention of appellants that, since portions of the sections have been invalidated, the entire sections are likewise void and of no effect. We have held contrary to this contention many times. In *Levy* v. *Albright,* 204 Ark. 657, 163 S. W. 2d 529, this court said:

''An act may be unconstitutional in part and yet be valid as to the remainder. Many cases so hold, and the following quotation from Cooley's Constitutional Limitations appearing in the case of *Oliver* v. *Southern Trust Co.,* 138 Ark. 381, 212 S. W. 77, has been many times approved by this court: ' ''. . . Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. *The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall.*[5] The point is not whether they are contained

---

[5] Emphasis supplied.

in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. . . ."

See also *Emberson* v. *Buffington,* 228 Ark. 120, 306 S. W. 2d 327, and cases cited therein. While these particular cases referred to statutes enacted by the Legislature, the rule is the same in construing Constitutions. The rule is stated in 16 Am. Jur. 2d, *Constitutional Law,* §42 (1964) as follows:

"The question may arise as to the effect of partial invalidity of a constitutional amendment. In accordance with the rules governing the invalidity of portions of a statute, it has been held that where part of an amendment to a state constitution is invalid because it violates the Federal Constitution, if the several parts of the amendment are separable, the valid portions may be saved, unless it is obvious that the intent of the adopters of the amendment was to accept one general scheme in an entirety, in which event, if part of the amendment falls, the whole must fall with it."

Our cases hold likewise. In *Bailey, Lt.-Gov.* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176, this court said:

"The rules governing the construction of constitutional amendments are the same as those governing the construction of statutes."

See also *Shepherd* v. *Little Rock,* 183 Ark. 244, 35 S. W. 2d 361.

We think, unquestionably, that the people would have passed the provisions in Amendment 45, fixing the House membership at one hundred members, and the Senate membership at thirty-five, irrespective of whether the other provisions (held invalid by the Federal District Court) had been contained in the sections. This is em-

phasized by the fact that, not once, but twice, the people adopted constitutional amendments, fixing the House and Senate memberships at the above mentioned numbers. Those provisions are certainly not dependent upon the language in the balance of the sections, but are completely independent requirements. We hold that these provisions are valid.

As to the second issue, we likewise agree with the Chancery Court that the Board of Apportionment is the proper authority to carry out the mandate of the Federal District Court. The Federal Court, though directing the Board of Apportionment to effect a valid reapportionment of the Arkansas House and Senate that would meet the requirements of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, made clear that it was not concerned about which body or agency of the state has the power to make the reapportionment.[6]

Here, again, we think it obvious that the creation of the Board of Apportionment is entirely independent of the other provisions of the amendment, and would have been passed by the people, though the invalid provisions had been omitted. As previously pointed out, the Legislature was originally given the task of reapportioning

---

[6] From the opinion in *Yancey* v. *Faubus*: "The Board of Apportionment is before the Court, and whether rightly or wrongly the Board is taking the position that it has or probably has the power to make a valid reapportionment. Since the Board takes this position, we think that it should be directed, and it will be directed, to come forth with a valid scheme of apportionment not later than June 15 of the current year. If it develops ultimately that the Board has no such power as a matter of State law, the Court can then take such steps as may seem necessary or appropriate in the circumstances, including the addition of other parties defendant if such a course seems necessary or desirable.

"The Court is aware that the Legislature is now in session, and the Court is aware also that the possibility of that body taking some action itself in the field of reapportionment is being discussed rather widely. Our directive to the Board to proceed to make a reapportionment by June 15 is certainly without prejudice to the right of the Legislature to take such action in the field as it may deem to be proper or judicious.

"After all, this Court is not directly concerned at this time with what body brings about a valid reapportionment, nor is it concerned with what particular scheme may be adopted ultimately provided that the chosen scheme meets the constitutional requirement laid down by the Reapportionment Cases."

the General Assembly at proper periods, but the people took away this right in 1936 when Amendment 23 was adopted, placing the authority in the Board of Apportionment. This choice was again reiterated by the passage of Amendment 45. It is true that this last amendment only gives the Board the authority to reapportion the House, but it is obvious that the reason for this distinction (from Amendment 23) is that Section 3 "freezes" the Senate, as heretofore mentioned. In fact, this was the only purpose in passing Amendment 45, as the other provisions of that amendment were substantially the same as the requirements of Amendment 23. This is even shown by the popular name: "To preserve present apportionment of State Senators and Existing Senatorial Districts." Amendment 45 repealed all laws in conflict with its provisions. In *St. Louis, I. M. & So. Ry. Co.* v. *State,* 86 Ark. 343, 111 S. W. 260, this court, through Justice Hart, quoted the general rule on this subject, as follows:

"Where there is, by a general clause, a repeal of all acts and parts of acts inconsistent with the statute, and it is apparent that the repealing statute is to be substituted for the one repealed, the unconstitutional character of the repealing statute will also render void the repealing clause. And on the same principle a prior statute will not be impliedly repealed by inconsistency with a subsequent unconstitutional one."

See also 82 C.J.S. Statutes, §281, and 102 ALR 802. Here, it is apparent that Section 3 of Amendment 45 ("freezing" the senatoral districts) was to take the place of, or be substituted for, Section 3 of Amendment 23, which provided for apportionment of the Senate by the Board. The Federal Court has held Section 3 of Amendment 45 in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and, under the law quoted, the repealing section was also void.

It is true that certain provisions of Amendment 23 would also be unconstitutional under the decision by the Federal District Court, but, as previously stated, the

number constituting House and Senate membership is not affected, and the creation of the Board of Apportionment is not affected. Under Amendment 23, the Board was given authority to apportion the Senate, as well as the House. In *Davis* v. *Synhorst,* 225 F. Supp. 689 (1964), a reapportionment case, a three-judge court said:

"If an act is repealed by an unconstitutional amendment, the former act remains in force when the unconstitutional amendment is declared void, providing this result gives effect to the Legislature's intention. The matter of legislative intent is controlling."

Likewise, in matters relating to constitutional amendments, the intent of the people is controlling.

Clearly, since 1936, the people have desired that apportionment be accomplished by the Board of Apportionment. It follows that this Board is the proper authority to undertake the reapportionment as ordered.

Affirmed.