The Honorable W.J. "Bill" McCuen Secretary of State State Capitol Little Rock, AR 72201-1094
Dear Mr. McCuen:
This is in response to your request for an opinion regarding Act 29 of the Second Extraordinary Session of 1994. You have asked several questions pertaining to the procedure established under Act 29 for filling the "vacancy in nomination" created thereunder.
Because the answer to your third question renders moot the remaining questions, this opinion will only address that question, which is as follows:
 3. Can the General Assembly properly declare a "vacancy in nomination" regarding a judicial seat that has never had an incumbent and did not exist before this Act?
It is my opinion that the answer to this question is "no." The "vacancy in nomination" provision presupposes that the General Assembly possesses the authority to create an additional circuit-chancery judgeship, and then prescribe the method for initially filling the office.[1] It is my opinion, however, that upon the creation of this additional judgeship, there is a present vacancy that must be filled in accordance with Amendment29 to the Arkansas Constitution. Section 1 of Amendment 29 states as follows:
 Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment by the Governor.
Please note that I have enclosed a copy of Attorney General Opinion 90-010, which addressed the applicability of Section 2 of Amendment 29[2] to the new circuit-chancery judgeships created under Act 949 of 1989. The act provided for the Governor's appointment of persons to serve until the general election. Opinion 90-010 addressed the issue of whether Section 2 of Amendment 29 applied to these appointees such that they would not be eligible to succeed themselves. In concluding that the Governor's appointive power under the 1989 act emanated from Section 1 of Amendment 29, and thus Section 2 was applicable, the opinion stated:
 The weight of authority in Arkansas is in accord with the proposition that a newly created office becomes vacant upon its creation. See Smith v. Askew, 48 Ark. at 89; Howell v. Howell, 213 Ark. at 308, citing State of Indiana ex rel. Hovey v. Noble, 118 Ind. 350, 21 N.E. 244. The appointive power is placed with the Governor in that instance, as to the offices enumerated under Amendment 29, Section 1.
Op. Att'y Gen. 90-010 at 3.
I agree with the conclusion reached in this opinion that a vacancy arises upon the creation of a new judgeship. The cases cited in Opinion 90-010, and in Attorney General Opinion 86-572
(cited in Opinion 90-010 and enclosed herein), appear to be conclusive of this issue. As noted in Opinion 86-572, the court in Smith v. Askew, 48 Ark. 82, 2 S.W. 349 (1886) queried:
 Can a vacancy occur in an office which has never been filled?
 48 Ark. at 89. The court responded:
 Vacancy is the state of being empty or unfilled. . . . A vacant office is an office without an incumbent; and it can make no difference whether the office be a new one or an old one. An old office is vacated by death, resignation or removal. An office newly created becomes ipso facto vacant in its creation. [Emphasis added.]
Id.
With regard to filling such a vacancy, the court in State exrel. Wood v. Cotham, 116 Ark. 36, 40, 172 S.W. 260 (1914) stated:
 [T]he method of filling a vacancy in [sic] unalterably fixed by the Constitution. [Citations omitted.]
The case of Howell v. Howell, 213 Ark. 298, 208 S.W.2d 22
(1948) is illustrative of the principle that the constitutional authority to fill vacancies by appointment cannot be conferred upon any one other than the Governor. Although that case involved legislation that named an incumbent to fill the new chancellor position, the conclusion is inescapable that the court would, similarly, have refused to uphold legislation such as Act 29, which creates the judgeship effective January 1, 1995, at which time an incumbent will be named by virtue of an election. The court considered the argument that no vacancy existed because the act named a chancellor, and stated:
 [F]or say proponents, since the Act that undertook to create the Chancery Division named an incumbent, no vacancy existed and the Executive has not been deprived of any right. The plausibility of this argument must yield to the practical mechanics of legislation which afforded the General Assembly every procedural convenience to establish the Division and at the same time produce a vacancy. Had that been done each governmental department — legislative and executive — would have acted in its accredited field, neither impinging upon the other.
213 Ark. at 305.
With regard to Act 29, the General Assembly could, similarly, have established the judgeship and produced a vacancy to be filled in accordance with Amendment 29. Howell compels the conclusion that the legislature lacked the authority to create the position and then provide some other means for filling it. The court in Howell stated: Chancellors are State officers under the constitution; and by the same authority the Governor has the right to fill vacancies pending election." Id.
I cannot conclude, in light of Howell and the cases cited above and in the enclosed Attorney General opinions, that when an additional judgeship is created and the first judge is to be elected by the people, there is no vacancy prior to such election. Accord Smith v. Askew, supra. Rather, it must be concluded that the office came into existence upon the act's passage (Act 29 was approved August 23, 1994), although it becomes effective at a later date (January 1, 1995). The vacancy arose upon the act's passage, when the judgeship was created. The executive function of appointment under Amendment 29 was, in my opinion, triggered at that point.
It is therefore my opinion that there can be no "vacancy in nomination" to be filled by the parties under current law. Act 29 is, in my opinion, unconstitutional to that extent. The vacancy that arose upon the creation of the judgeship must, instead, be filled by appointment of the Governor pending election in accordance with Section 4 of Amendment 29.[3]
The remainder of Act 29 will, however, in my opinion, remain in effect. The provisions of the act are made severable by Section 6 thereof. A severability clause evinces legislative intent that an express provision found to be unconstitutional should be disregarded without disturbing the remainder of the act. Reid v.Jones, 261 Ark. 550, 551 S.W.2d 191 (1977). A severability clause is not, however, conclusive of whether the remainder can stand. See Combs v. Glen Falls Ins. Co., 237 Ark. 745,375 S.W.2d 809 (1964). The test is whether the legislature would have enacted the rest of the statute had it known in advance that a portion was unconstitutional. Id.
A court, in making this determination, will look to see whether the provisions of the act are so connected together in subject matter or so dependent upon each other that it cannot be presumed that the legislature would have passed one without the other.See Smith v. Bentley, 493 F. Supp. 916 (D.C. Ark. 1980);Faubus v. Kinney, 239 Ark. 443, 389 S.W.2d 887 (1965). As stated in Faubus, supra:
 `If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. . . .'
239 Ark. at 446-447, quoting from Cooley's ConstitutionalLimitations, cited in Oliver v. Southern Trust Co.,138 Ark. 381, 212 S.W. 77 (1919).
The purpose of Act 29, as reflected in its title and emergency clause, was to create a new circuit-chancery judgeship, to be filled immediately. Section 8 (the emergency clause) states that "the caseload of the Seventeenth Judicial District (West) necessitates the appointment of an additional circuit-chancery judge immediately. . . ." The election mechanism under Act 29 was presumably devised in order to accomplish this purpose. The remainder of the act can, however, remain intact and be given effect independent of the unconstitutional portion involving the November election. The position can be immediately filled by executive appointment, in accordance with Ark. Const. Amend. 29, § 1, with the appointee serving until the next general election, i.e., November, 1996. See Ark. Const. Amend. 29, § 4. Thus, the legislative intent to provide for an immediate appointment can be effected, and the judgeship will be in place with the remainder of the act governing the court's operation and other matters pertaining to the judge. This will, it seems, accomplish the apparent legislative intent.
The case of Pope v. Pope, 213 Ark. 321, 210 S.W.2d 319 (1948), reflects a similar outcome wherein the court overruled its previous decision (Howell v. Howell, supra) voiding the act as inseparable. The court in Howell had held that the act was intended as a whole and that the unconstitutional portion naming an incumbent to the new chancellor judgeship was not severable.213 Ark. at 305, 310. In reversing this decision, the court inPope stated:
 Numerous acts have been passed containing provisions similar to § 12 of Act 42, and these acts have been upheld, after eliminating any unconstitutional part of the act, provided the part which remained after striking down the unconstitutional portions thereof left a workable act. . . . Here we have an act which creates a court . . . and when the unconstitutional provisions of the act are stricken, we have an office without a judge, which may be filled in the manner provided by the Constitution, that is, by appointment by the Governor.
213 Ark. at 323.
Act 29 is, similarly, in my opinion, a "workable act." As stated in Faubus, supra, "[t]he constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall." 239 Ark. at 446. It is therefore my opinion that the remainder of Act 29 is valid and in effect, after the unconstitutional portion regarding the November 1994 election is excised.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
Enclosures
[1] Act 29 creates the additional judgeship "effective January 1, 1995." Acts 1994 (2nd Ex. Sess.), No. 29, § 1. It then provides for the election of the additional judge at the November, 1994 election. The "vacancy in nomination" is created, as the act states, "since the provisions of this act will not be effective until after the 1994 Preferential Primaries have taken place. . . ." Id.
[2] Section 2 states that "[n]o person appointed under Section 1 shall be eligible for appointment or election to succeed himself."
[3] Ark. Const. Amend. 29, § 4 states:
 The appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in regular course be filled at the next General Election if no vacancy had occurred. If such office would not in regular course be filled at such next general election the vacancy shall be filled as follows: At the next General Election, if the vacancy occurs four months or more prior thereto, and at the second General Election after the vacancy occurs if the vacancy occurs less than four months before the next General Election after it occurs. The person so elected shall take office on the 1st day of January following his election.